| | | |
|---|---|---|
| CATHY VALDEZ, as Administratrix | ) | |
| The Minor Child, JHH, III, of the | ) | |
| ESTATE OF JAMES H. HELTON JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11-CV-484 |
| | ) | |
| INDIANA STATE PRISON, BILL WILSON, | ) | |
| Superintendent, Indiana Department of Correction, | ) | |
| and "JOHN DOES/JANE DOES" | ) | |
| (unidentified prison guards/medical personnel | ) | |
| sued in their individual capacity), and | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| a Saint Louis, Missouri Corporation, and | ) | |
| DR. JOHN DOES, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

James H. Helton, Jr. died while incarcerated at Indiana State Prison ("ISP") in Michigan City, Indiana. Helton's Estate and his minor child believe that his death was the result of inadequate medical care and therefore filed this suit against two groups of defendants. The first group, which I'll call the "State Defendants," includes ISP, its Superintendent, and unidentified prison guards and medical personnel. The second group includes the corporate entity Correctional Medical Services, which contracted with the state of Indiana to administer health care services at ISP, and unidentified doctors working for that entity. Correctional Medical Services has answered the Complaint. The State Defendants, however, have moved to dismiss. For the reasons explained below, the State Defendants' motion will be granted.[1]

---

[1] The Court apologizes to the parties for the substantial delay in addressing this motion to dismiss. Due to an oversight, the motion slipped through the cracks of our motion management system.

**BACKGROUND**

The following factual background comes from the allegations in the Complaint, which I accept as true for the purposes of a motion to dismiss.  Helton was incarcerated at ISP from November of 2003 until his death on December 26, 2009.  During that time Correctional Medical Services was administering health care services under a contract with the State of Indiana and Bill Wilson was the Superintendent of ISP.

Helton developed medical issues in late 2009.  He had trouble going to the bathroom for three weeks, became bloated, and sought medical care on December 12, 2009.  At some point in time, Helton's skin color began to change, his hands blackened, and his lips blued – a change in overall condition that was observed by several fellow inmates.  The medical staff and correctional officers took no steps to provide medical care, however.  On December 18, 2009, the medical services staff was told that Helton could not sleep, eat, or urinate and that he should be taken to an outside hospital.  No action was taken, however.  On December 26, 2009, Helton was found dead in his cell.

Plaintiffs allege that Helton's death was the result of negligence, reckless misconduct, and deliberate indifference on the part of Correctional Medical Services and its staff.   They also allege that the deliberate indifference of the prison correctional officers are to blame for his death.  These claims are based on 42 U.S.C. § 1983, the Eight Amendment, the 14th Amendment, Indiana's wrongful death statute, and common law negligence.  As noted, Correctional Medical Services answered the complaint, but the State Defendants have moved to dismiss.

**DISCUSSION**

The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8.  That rule requires "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8. But to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). And although at this stage I must accept all allegations as true and draw all reasonable inferences in the Plaintiffs' favor, I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *Iqbal*, 129 S.Ct. at 1949-50.

## I.    Proper Service

The State Defendants first move for dismissal for "insufficient service of process" under Fed. R. Civ. P. 12(b)(5). Plaintiffs have essentially conceded that they did not properly serve any of the State Defendants. In response to the argument that service was not properly effectuated, Plaintiffs merely state that they are "allowed 120 days to properly serve the summons and complaint and this time has not expired." [DE 19 at 3.] At the time that statement was written, it was true. Since then, however, that expiration date has passed and still Plaintiffs have filed no proof of proper service with this court. On this ground alone, then, the State Defendants must be dismissed.

A 12(b)(5) dismissal is without prejudice. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1007 (7th Cir. 2011) ("A dismissal pursuant to a Rule 12(b)(5) motion ordinarily should be entered without prejudice."). However, many of the State Defendants other grounds for dismissal are also persuasive, and many of those result in the dismissal of claims *with prejudice*. Since *res judicata* applies to those claims dismissed with prejudice, the following analysis distinguishes between those claims and defendants that are dismissed with and without prejudice.

## II.     Claims Against John Does

Plaintiffs name various John and Jane Does as unidentified prison guards/medical personnel in their individual capacity, but it cannot pursue claims against them until they have been identified by name.  "[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff."  *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted).  If at some point in the future the Plaintiffs can identify and name a defendant against whom they can state a claim, then they can attempt to amend the complaint.  For now, however, retaining John and Jane Does as defendants serves no purpose, and they are therefore be dismissed *without* prejudice.

## III.     Claims Against ISP

Plaintiffs' claims against ISP are based on alleged violations of Helton's constitutional rights under the Eighth and Fourteenth Amendments.  The Eleventh Amendment, however, generally precludes a citizen from suing a state or one of its agencies or departments for money damages in federal court.  *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). There are three exceptions to Eleventh Amendment immunity:  (1) suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment; (2) individuals may sue a state directly if Congress has abrogated the state's immunity from suit; and (3) individuals may sue the state if the state waived its sovereign immunity and consented to suit in federal court.  *MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999) (citing *Marie O. v. Edgar*, 131 F.3d 610 (7th Cir. 1997)).

The ISP is a branch of the Indiana Department of Corrections and thus is clearly a state

agency for purposes of Eleventh Amendment immunity. *Wynn*, 251 F.3d at 592; *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 735 (7th Cir. 2000). Moreover, none of the exceptions to Eleventh Amendment immunity apply: Indiana has not consented to this suit, Plaintiffs are not seeking prospective injunctive relief, and Congress did not abrogate the State's immunity through the enactment of Section 1983. *See Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). So Plaintiffs' Section 1983 claim against ISP for money damages is barred by the Eleventh Amendment. *See Wynn*, 251 F.3d at 592 (finding that ISP is a state agency and thus is immune from suit in federal court for money damages).

Moreover, Plaintiffs do not possess standing such that they could ever bring a claim for injunctive relief against ISP. To do so, Plaintiffs would have to show that: (1) Helton suffered an "injury-in-fact," (2) the injury is fairly traceable to the challenged conduct of ISP, and (3) the requested relief would likely redress the injury suffered. *Friends of the Earth, Inc. v. Laidlaw Environmental Serv.*, 528 U.S. 167, 180-81 (2000); *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). Plaintiffs cannot meet the third requirement of this test because any injunctive and declaratory relief they might seek would not affect Helton in any way and would certainly not redress his alleged injuries. *See Platcher v. Health Professionals, Ltd.*, 2006 WL 1980193, at *4 (C.D. Ill. 2006) (capable-of-repetition doctrine could not save claim for injunctive relief brought by father of deceased prisoner because plaintiff lacked standing when suit was commenced); *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 550 (6th Cir. 2003) (mother of deceased prisoner could not pursue claim to enjoin prison's unconstitutional medical policy, because injunction could not impact decedent).

All claims against ISP are therefore dismissed *with* prejudice.

**IV.     *Monell* Claims**

Plaintiffs' Complaint further alleges that the "Defendants' actions and inactions were taken pursuant to the policy, practice, or custom of the Indiana State Prison and the Correctional Medical Services Corporation."  [DE 1 at 5.]  This appears to be an attempt to state a claim under Section 1983 for constitutional deprivations based upon customs or policies pursuant to *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978).  This claim cannot proceed against any of the defendants named here, however, because "*Monell*'s holding applies only to municipalities and not states or states' departments."  *Joseph*, 432 F.3d at 748-49 (7th Cir. 2005).  *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) ("[W]e consequently limited our holding in Monell to local government units which are not considered part of the state for Eleventh Amendment purposes.").

All *Monell* claims are therefore dismissed *with* prejudice.

**V.     Official Capacity Claims Against Wilson**

To the extent Wilson is being sued in his official capacity, he is also immune from Plaintiffs' Section 1983 claims.  The Eleventh Amendment immunity bar remains in effect where state officials are sued for damages in their official capacities.  *Wynn*, 251 F.3d at 592 (barring claims against corrections officials in their official capacities).  Accordingly, the Eleventh Amendment bars Plaintiffs' Section 1983 claim for damages against Wilson in his official capacity.  *Id*.

All claims against Wilson in his official capacity are therefore dismissed *with* prejudice.

**VI.  Individual Capacity Claims Against Wilson**

With the underbrush cleared away, we are left only with the claims against Wilson in his individual capacity.  Plaintiffs' Complaint is not a model of draftsmanship as it collectively

asserts *all* its causes of action against *all* the various defendants.  So, read liberally, it appears to state claims against Wilson for:  1) 14th Amendment deprivation of life, liberty, or property, 2) Eighth Amendment deliberate indifference, and 3) wrongful death and negligence under state law.

### 1.      Fourteenth Amendment Claims

Plaintiffs argue that Helton's minor son has a 14th Amendment claim on the theory that he "was deprived of [a] substantive due process right to a relationship with his father."  [DE 19 at 5.]  The only case Plaintiffs cite in support of this theory is *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), which was *explicitly* overruled by *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005) ("We therefore overrule our decision in *Bell* . . . .").

It is true that *Russ* only specifically addressed claims related to *adult* children, while potentially leaving the door open for the claims of minor children, who "warrant . . . sharply different constitutional treatment."  *Russ*, 414 F.3d at 790.  But *Russ* made no distinction between adult or minor children when stating that "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court."  *Id.*  The Southern District of Indiana considered this issue under identical circumstances (a minor child suing for the death of an incarcerated parent) and persuasively extended the *Russ* decision to grant defendants' summary judgment claim and dismiss the minor child's § 1983 claims.  *Estate of Perry v. Boone County Sheriff*, 2008 WL 694696, at *11–12 (S.D. Ind. 2008) ("Plaintiffs have not presented any evidence, much less even alleged, that the actions of the Defendants were specifically directed at disrupting the familial relationship.").  There are no allegations in the

Plaintiffs' Complaint that ISP officials took action against Helton specifically to disrupt the familiar relationship.

Moreover, to the extent Plaintiffs are trying to bring a 14th Amendment claim on behalf of Helton himself for the deprivation of his liberty interest in bodily integrity, this claim is properly construed as an Eighth Amendment deliberate indifference claim (since Helton was incarcerated of his death). "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005). The Supreme Court has held that where a particular "Amendment provides an explicit textual source of constitutional protection against [a particular sort of government behavior], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). If, as here, "a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under [that] standard." *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997). It ends up being a somewhat academic point, since the analysis under the Eighth and 14th Amendments is essentially identical. *Heard v. Sheahan*, 148 Fed. Appx. 539, 540 (7th Cir. 2005) ("The Fourteenth Amendment, not the Eighth, protects a pre-trial detainee from denial of adequate medical care, but our analysis is practically identical to the Eighth Amendment standard of deliberate indifference."). Nevertheless, its important to be precise as to Plaintiffs' causes of action.

The 14th Amendment claims are therefore dismissed *with* prejudice.

## 2.    Eighth Amendment Claim

Plaintiffs Eight Amendment claim against Wilson in his individual capacity is a slightly more promising legal theory.  As noted,  "[p]rison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno*, 414 F.3d at 652.

To hold Wilson liable in his individual capacity for deliberate indifference, however, Plaintiffs must suggest a link between Wilson and the deliberate indifference.  "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official.  A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary."  *Kuhn v. Goodlow*, 678 F.3d 552, 557 (7th Cir. 2012).  At this point, Plaintiffs' Complaint does not sufficiently allege that Wilson was personally responsible for any deprivation of Helton's constitutional rights.  Although Plaintiffs allege that Wilson was deliberately indifferent to Helton's serious medical needs, such a statement is merely conclusory, and Plaintiffs offer no factual allegations demonstrating Wilson had personal knowledge of Helton's medical needs.  Plaintiffs' mere recitation of the elements of a deliberate indifference claim does not sufficiently state a claim for relief from Wilson in his individual capacity.

Therefore the Eighth Amendment claims against Wilson are dismissed *without* prejudice.

## 3.    State Law Wrongful Death and Negligence

Finally, Plaintiffs allege state law claims against Wilson for wrongful death and negligence.  As the State Defendants point out, however, the Complaint's allegations against Wilson are so threadbare that these claims are not plausible – a fact that Plaintiffs seems to have conceded itself, as its response brief didn't bother to address these points.  Failure to respond to

arguments raised in a motion to dismiss results in a forfeiture of the challenged claims. *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011) (forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"). Therefore, Plaintiffs' state law claims against Wilson are dismissed *with* prejudice. *Walsh v. Arrow Fin. Servs., LLC*, 2012 WL 255802, at *3 (N.D. Ill. 2012) (dismissing plaintiff's claim *with* prejudice after she failed to respond to defendant's motion to dismiss); *Dillard v. Chicago State Univ.*, 2012 WL 714727, at *3 (N.D. Ill. 2012) (same).

## CONCLUSION

For the foregoing reasons, the motion to dismiss by the Indiana State Prison and Bill Wilson [DE 14] is **GRANTED**. The Indiana State Prison, Bill Wilson, and John/Jane Does are **DISMISSED**. If Plaintiffs have good cause to file an amended complaint, it must be filed by October 5, 2012.

**SO ORDERED**.

ENTERED: September 7, 2012

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

10